### MAYS, administratrix, *v.* MAYS.

GILBERT, J. 1. That portion of the judgment of the court sustaining certain demurrers, to which there is exception, was not erroneous.

2. The court, over objection, permitted a witness to testify as follows: " Dr. Mays said he was going to marry. He said he wanted a wife in his old age. I told him that I thought it would be a good thing if he could find a lady who would make him a companion in his old age. He said he reckoned he would get married, but that he did not know any one who would marry him except for what he had; he said that he expected to take care of his child, that he was the only one he had, was his only relative in that relation, and he expected to take care of him, that nobody should come between him and his child." The ground of objection was that the testimony was " irrelevant and immaterial, and that it appeared that the declaration was made quite awhile before his marriage " (about a year previous to the marriage). *Held,* that the admission of this evidence over the objection was error. *Hollis* v. *Sales,*

103 *Ga.* 75 (3), 79 (29 S. E. 482); *Hill* v. *McLendon*, 147 *Ga.* 733 (95 S. E. 232); *Stevens* v. *Vancleve*, 4 Wash. (C. C.) 262, 265 (Fed. Cas. No. 13412).

3. The court permitted O. M. Duke to testify that "Dr. Mays told him that he was going to deed John Billie [the defendant] all his lands." The objection made at the time was that the statement was made to the witness as an attorney at law in contemplation of employment, it appearing from the evidence that Mr. Duke was an attorney at law and that Dr. Mays first asked him which was best — a will or a deed, and after getting his opinion on this question the statement above quoted was made. In a note to this ground of the motion the court says: "The witness further testified, 'Dr. Mays did not employ me nor did he say anything about having me as his lawyer. He did not pay me anything for my advice. He said nothing about me preparing any papers or anything for him.'" *Held*, that in view of the note of the court the admission of this evidence was not error.

4. In the sixth and seventh grounds of the motion for a new trial movant complains that the court erred in permitting several witnesses to testify, in substance, that they knew the general character of the defendant, and that it was good. The objection made at the time was that such evidence was irrelevant and immaterial, and that "evidence as to character is not admissible in civil cases like this one." *Held*, that the admission of this evidence, in view of the charge made against the defendant, was not error. Civil Code (1910), § 5745; *McNabb* v. *Lockhart*, 18 *Ga.* 495; *German American Mutual Life Association* v. *Farley*, 102 *Ga.* 720 (5), 744 (29 S. E. 615).

5. Movant complains that the court allowed counsel for the plaintiff to read to the jury from the opinion of the Supreme Court in the case of *Shropshire* v. *State*, 81 *Ga.* 589, 593 (8 S. E. 450). While counsel for the defendant was addressing the jury he commenced to read from said opinion to the jury, when plaintiff's counsel objected on the ground that it was contrary to law and illegal for counsel to read cases from the reports of the appellate courts to the jury in civil cases. The court overruled the objection, and stated that counsel might read the case as a part of his comment, and not as a rule of law. *Held:* It has been frequently ruled that on the trial of civil cases decisions of this court, and especially comments upon the facts of cases, should not be read by counsel to the jury. *Hudson* v. *Hudson*, 90 *Ga.* 581 (3), 586 (16 S. E. 349); *Central of Ga. Ry. Co.* v. *Hardin*, 114 *Ga.* 548 (40 S. E. 738). It does not appear that any of the facts of the *Shropshire* case were read to the jury. This ruling of the trial court will not require the grant of a new trial. It it better practice, however, for trial courts not to permit counsel to infringe this rule.

6. As there is to be another trial, no ruling is made as to the sufficiency of the evidence.

*Judgment reversed. All the Justices concur, except Fish, C. J., and Atkinson, J., who dissent from the ruling in the first headnote.*

No. 2799.   JULY 15, 1922.   REHEARING DENIED JULY 26, 1922.

Equitable petition. Before Judge Searcy. Butts superior court. July 20, 1921.

Mrs. R. W. Mays, as administratrix of the estate of Dr. R. W. Mays, deceased, filed a petition containing two counts, alleging substantially the following: In the latter part of 1910 Dr. Mays, a widower, began to visit the plaintiff, a single woman. Soon afterward Dr. Mays proposed marriage, and the marriage occurred on September 28, 1911. Dr. Mays died intestate on December 9, 1918. John Billie Mays, a child of Dr. Mays by a former marriage, is his only living descendant. On December 13, 1918, John Billie Mays, defendant, filed for record in the office of the clerk of Butts superior court two instruments purporting to have been executed by Dr. Mays on July 18, 1911, and conveying to the defendant some forty-odd separate parcels of real estate, consisting of a large number of town lots and a number of farm tracts, some of which contained considerable acreage. In said conveyances the grantor reserved to himself " the use, possession, and control " of the property conveyed, " for and during his life." The first count of the petition alleges that neither of said instruments was signed by Dr. Mays; that he did not know at the time of his death that it was in existence, if it was in fact in existence; that he had never authorized any one to sign said instrument for him, and that it was not genuine; that she had requested defendant to allow her to see said instrument, but he had failed to comply with the request and she had never seen the same; that defendant is in possession of said properties, has received the rents and profits thereof since December 15, 1918, and refuses to deliver the property or pay the profits arising therefrom to petitioner; that petitioner is entitled, in her representative capacity, to the possession of the property referred to in said instruments, for the purpose of paying debts of said estate and for distribution. The prayers are, that said instruments be declared null and void and be canceled; that defendant be enjoined from selling, encumbering, or in any way disposing of said property or the rents, issues, and profits; that plaintiff recover possession of the property; for general relief and process. The second count of the petition is similar to the first count, except that it alleges that said instrument, if in fact executed by Dr. Mays, was void, because it was an attempt upon his part to convey his property to another in trust for his benefit; that from the date of said paper to the date of his death, he was not a person for whose property a trustee could be appointed under the

law; that said instrument did not have the effect of changing the title to the property, but left the title and right of possession the same as though it had never been executed. The prayers in the second count are similar to those of the first count.

The petition was amended by setting up that petitioner was entitled to recover the rents, issues, and profits received by defendant since December 15, 1918, less such amounts as he might have the right to set off against the same on account of amounts paid for taxes, improvements, repairs, etc. A second amendment to the petition was filed, in which, after denying that Dr. Mays signed said instrument, it is alleged, that, if his signature is genuine, the three pages immediately preceding the page on which the signature appears, and which contain the description of all the property conveyed by the instrument, were inserted by some unauthorized person after Dr. Mays had signed the instrument, and without his knowledge. A third amendment to the petition was filed, alleging that at the time said instrument bears date, and for several months prior thereto, and continuously until the ceremony of marriage was performed, the plaintiff and Dr. Mays contemplated and intended marrying each other, and it was understood between them that they were so to marry; that she did not know of or suspect the existence of said instrument; that she lived with Dr. Mays as his wife continuously from the time of marriage until his death; that if said instrument is found to be genuine, it was made while plaintiff and Dr. Mays both contemplated marrying each other, on the eve of their marriage and while it was understood between them that they were soon to marry, for the purpose of preventing plaintiff from having any interest in the property described in said instrument at the death of Dr. Mays by reason of being his widow, and for the purpose of defeating any right she might have in said property at his death by reason of being his widow; that they were merely colorable transactions without any valuable consideration, not having or intended to have the effect of lessening the grantor's dominion over and use of or benefits from said property, and not intended to be real or operative except as a means of giving said property to John Billie Mays at the death of the grantor, and depriving plaintiff of her interest and right therein; that it was understood between Dr. Mays and the defendant, at the time of the execution of said deed, that they would keep its existence a secret

from every one else, and that this was done until after the death of Dr. Mays; that as against the rights of plaintiff in and to said property covered by said deed, by reason of being the widow of Dr. Mays, said instrument of writing is null and void and of no effect. Prayers similar to those of the first count were included.

The petition, as originally filed, referred to two separate instruments of writing; but by amendment all reference to one of them was stricken. The allegation in the first count of the petition, that " there are many facts and circumstances inconsistent with the genuineness of said instruments, or either of them, or that Dr. Mays signed them, or either of them, or that Dr. Mays authorized any one to sign them, or either of them,". was demurred to on the ground that the " facts and circumstances " are not sufficiently alleged to enable defendant to properly prepare his defense. The second count was demurred to on the grounds: (a) that it sets forth no cause of action; (b) the facts alleged therein are insufficient to authorize the granting of the relief sought; (c) that there is nothing in the deed attached to the petition to authorize the conclusion of the pleader that the same was an attempt on the part of Dr. Mays to create a trust in his favor, and therefore did not have the effect of changing the title of said property; and that it did affirmatively appear that the legal effect of the deed was to convey to defendant the fee-simple title to the property. The third amendment was demurred to on the ground that it was an effort to add a new and distinct cause of action and a new party plaintiff, to wit, Mrs. R. W. Mays in her individual capacity and not in her representative capacity. These demurrers were sustained, the court holding as to the third amendment that " the administratrix cannot maintain this action, but this cause of action, if available at all, would be available only to Mrs. Mays as an individual." Other grounds of demurrer were overruled, but no exception to that ruling was taken. Trial of the case resulted in a verdict for the defendant. The plaintiff assigned error on exceptions taken pendente lite to the judgment sustaining the demurrers, and on the judgment denying the motion for a new trial.

*W. E. Watkins, Reagan & Reagan,* and *Horace & Frank Holden,* for plaintiff.

*H. M. Fletcher, C. L. Redman,* and *Greene F. Johnson,* for defendant.